IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

HAPPY STOMPINGBEAR                                                          PLAINTIFF

v.                                      NO. 6:18-CV-06114

LARRY REED, GUNNER
PRITCHARD, AND 7 JOHN DOES                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

The Court has received a Report and Recommendation (ECF No. 60) from United States
Magistrate Judge Barry A. Bryant.  Plaintiff, currently incarcerated in the Arkansas Department of
Correction ("ADC"), proceeds in this 42 U.S.C. §1983 action *pro se* and in *forma pauperis*,
challenging the constitutionality of certain actions taken against him by prison officials.
Defendants have filed a Motion for Summary Judgment (ECF No. 37), Plaintiff has filed a
Response in Opposition (ECF No. 48) and Defendants have replied (ECF No. 54).  Plaintiff also
filed a Reply (ECF No. 53).  This matter is ripe for consideration.

Upon review, the Magistrate recommends that Defendants' motion be granted, and that
Plaintiff's Amended Complaint be dismissed with prejudice.  Plaintiff has filed timely, written
Objections to the Report and Recommendation.  (ECF No. 61.)  The Court has conducted a *de
novo* review of this case and finds for the reasons set forth herein finds that the Defendants' Motion
for Summary Judgment (ECF No. 37) should be **GRANTED in part** and **DENIED in part**.

I.       BACKGROUND

Because the Report and Recommendation sets out the facts of this case in detail, the Court
will not recount them here except as necessary to this decision.  Plaintiff admits that on October
19, 2017, in the hallway outside the prison cafeteria, he became frustrated, used crude language,
and raised his arm in an offensive gesture towards two ADC wardens.  Plaintiff was given a Major
Disciplinary for violating ADC order with this disruptive behavior, and he was assigned to

1

Behavior Control.  Plaintiff alleges that, during ensuing events, defendant corrections officers acted in violation of his constitutional rights, specifically the Eighth Amendment prohibition of cruel and unusual punishment and the Due Process clause.

Plaintiff filed his Amended Complaint on November 30, 2018 alleging: (1) ADC Defendants  Larry Reed, Gunnar Pritchard, and four unnamed Doe Defendants, acting in both their official and personal capacities used excessive force against him in violation of the Eighth Amendment prohibition of cruel and unusual punishment; (2) a Doe Defendant, possibly Larry Reed, acting in both his official and personal capacities, violated Plaintiff's Fifth and Fourteenth Amendment Due Process rights by taking his property and assigning him to Behavior Control for 11 days without a hearing; and (3) three unnamed Doe Defendants subjected him to the conditions of Behavior Control in retaliation for exercising his First Amendment rights.  (Am. Compl., Nov. 30, 2018, ECF No. 5).  The Amended Complaint seeks relief in the form of compensatory damages, punitive damages, a reduction of sentence, a formal apology, and formal charges against those that are guilty.  (*Id.* at 10.)

ADC Defendants Reed and Pritchard filed a Motion for Summary Judgment asking the Court to dismiss all claims against them with prejudice.  In their brief, Defendants argue: (1) they are entitled to 11th Amendment sovereign immunity in their official capacities; (2) the individual capacity claim against Reed is limited to an allegation of excessive force with handcuff restraints; (3) the individual capacity claim against Pritchard is limited to an allegation of excessive force inside the infirmary; (4) Reed and Pritchard are entitled to qualified immunity in their individual capacities; and (5) Plaintiff's Complaint is barred by *Heck v. Humphrey* to the extent Plaintiff seeks to invalidate his conviction and prison sentence.  (Mot. Summ. J., Nov. 4, 2019, ECF No. 38).

Plaintiff filed a response in opposition to the summary judgment motion contending many material issues of fact remain for trial, including whether Defendant Reed intended to cause pain when he placed handcuff restraints on Plaintiff, whether Reed should be held liable under a theory of supervisor liability for the subordinates that ran Plaintiff's head into the infirmary door; whether Reed violated Due Process assigning Plaintiff to Behavior Control without a hearing; whether the conditions of Behavior Control violate Due Process; whether Defendant Pritchard is liable for ramming Plaintiff's head into the infirmary door under a theory of group liability; whether Pritchard acted without provocation when he used force against Plaintiff inside the infirmary; and whether Defendants' actions violated clearly established law.  Plaintiff also contends the State waived 11th Amendment sovereign immunity by defending Defendants in this Court.  Lastly, Plaintiff waives any claim to invalidate his conviction or reduce his sentence. (Resp. Mot. Summ. J., Dec. 18, 2019, ECF No. 48.)

## II.    STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*.

When ruling on a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.*  Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the burden rests with the non-moving party to set forth specific facts, by affidavit or

other evidence, showing that a genuine issue of material fact exists. *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999) (citing *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998)). "A verified complaint is the equivalent of an affidavit for summary judgment purposes." *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994) (quoting *Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991)).[1]

## III.   DISCUSSION

### A.   Official Capacity Claims

Defendants contend that they are entitled to Eleventh Amendment sovereign immunity in their official capacities. (Defs.' Mot. Summ. J., Nov. 4, 2019, ECF No. 38 at 4–5). The Magistrate agreed, finding Defendants were state officials acting in their official capacities, and as such, they are not "person[s]" subject to Section 1983 liability. (ECF No. 60 at 13.)

Plaintiff objects to the Magistrate's report contending that the attorney general waived the State's Sovereign immunity by defending Defendants, citing *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir. 1992). (ECF No. 48 at 2).

Plaintiff's objection is overruled. "A state official may waive the state's immunity only where specifically authorized to do so by that state's constitution, statutes, or decisions." *Fromm v. Comm'n of Veterans Affairs*, 220 F.3d 887, 890 (8th Cir. 2000) (quoting *Santee Sioux Tribe of Neb. v. State of Neb.* 121 F.3d 427, 431 (8th Cir. 1997)). Arkansas does not have a statute authorizing the attorney general to waive the State's immunity. *See* ARK. CODE ANN. §§ 25-16-701–716. Being under an obligation to appear here, the attorney general did not waive sovereign immunity. *See* ARK. CODE ANN. § 25-16-703. As Plaintiff's official capacity claims are barred by the Eleventh Amendment, they are subject to dismissal.

---

[1] Plaintiff's Amended Complaint was signed under penalty of perjury. (ECF No. 5 at 11).

**B.      Individual Capacity Claims**

In a section 1983 action, state actors acting in their individual capacities may be entitled to qualified immunity.   The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457, U.S. 800, 818 (1982).

When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a constitutional right, and also that the right was clearly established.   *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Johnson v. Fankell,* 520 U.S. 911, 915, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (providing courts can now exercise discretion in deciding which prong to address first).  "[I]f there is a genuine dispute concerning predicate facts material to the issue of qualified immunity issue, there can be no summary judgment…At this stage we are prohibited from weighing evidence or making credibility determinations." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (internal quotations and citations omitted). Accordingly, the Court must determine whether Plaintiff has presented evidence sufficient to make out the deprivation of a clearly established constitutional right.

**1.      Eighth Amendment Excessive Force**

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. CONST. amend. XIII.  Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).  Significant injury is not required to make out an

Eighth Amendment excessive force claim.  *Id.* at 9.  The Eighth Amendment's prohibition of cruel

and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of

physical force, provided that the use of force is not of a sort repugnant to the conscience of

mankind.  *Id.* at 9–10 (citing *Whitley*, 475 U.S. at 327).

### a.      Handcuffing

After voicing disrespect and raising his arm in a defiant gesture, Plaintiff started walking

away in the direction of his barracks.  He had gone about ten feet when Defendant Reed caught up

to him and told him to face the wall and put his hands behind his back.  It is Plaintiff's contention

that he complied, and when Reed placed the handcuffs on his wrists he put them on "extra super

tight and crooked" "with the intent purpose to cause [Plaintiff] harm."  (ECF No. 5 at 5).  He

describes the "crooked" handcuffing:

> Say your wrist is kind of oblong, and the cuffs, they appear to be round, but after
> you click so many times they're oblong as well.  So most people will match the
> oblong circle with the oblong wrist where they fit . . . where they're both oblong in
> the same direction.  He took my wrist the other way, and it's like putting a slot in
> another slot sideways.  He crammed the cuffs down really tight, and it cut into me,
> cut into my wrists real bad."  (Pl.'s Resp. Opp'n, ECF No. 48-1 at 9).

Plaintiff asserts he told Reed it hurt and asked if Reed could fix it, and in response, Reed just

pushed him.  (*Id.* at 10).  For a second time, Plaintiff told Reed it hurt and said if Reed did not quit,

he was going to protest his actions.  (*Id.* at 9–10).  Reed pushed him again and in response, Plaintiff

went limp and started yelling, "this is a passive protest."  (*Id.*).  Plaintiff claims he was made to

wear the same painfully crooked handcuffs all the way to the infirmary, through a beating in the

infirmary, and then to isolation—which was across the unit—and then through another beating in

isolation.  (ECF No. 61 at 1).  Plaintiff alleges the excessive force caused a permanent scar and he

experiences pain and numbness in his right hand.  (ECF No. 5; ECF No. 48-1 at 58).

For his part, Defendant Reed denies placing the handcuff restraints on Plaintiff with intent to cause harm.  Reed recalls placing "a finger between the cuffs and Plaintiff's wrists to ensure that the handcuff restraints were not too tight on [Plaintiff's wrists]."  Reed denies that Plaintiff complained to him that the handcuff restraints were too tight.  (Aff. Larry Reed, Nov. 4, 2019, ECF 37-2.)

The Court finds there is a genuine issue of fact as to whether Reed applied the cuffs with intent to cause harm.  Accepting Plaintiff's facts as true, as required at the summary judgment stage, Reed knowingly used a handcuffing method that was improper.  Correctional officers are trained on the proper handcuffing method.[2]  Further, putting handcuffs on "crooked" would have no penological purpose.  Rather, the only purpose would be to cause pain.  Plaintiff alleges that Reed was also aware that he was causing Plaintiff pain, as Plaintiff told him that the handcuffs were too tight and asked him to fix them, and in response, Reed pushed him.  A jury could find that Reed applied the handcuffs maliciously and sadistically to cause harm, equating to a violation of the Eighth Amendment, regardless of the fact that the injury—scarring and numbness[3]—may not be considered a significant injury.  Because Reed asserts that he did not purposely tighten the handcuffs and that Plaintiff did not complain to him that the handcuff restraints were too tight (ECF No. 37-2 at 2), there is a genuine issue of material fact as to whether Reed applied force in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. The fact issue precludes summary judgment on Plaintiff's Eighth Amendment excessive force claim against Reed, and Summary judgment should be denied.

---

[2] An Arkansas Department of Correction Administrative states, "[o]nly employees who have received training approved by the Arkansas Department of Correction Training Academy shall be permitted to use . . . other control measures such as . . . restraints."  ARK. DEP'T CORR., ADMINISTRATIVE DIRECTIVE: USE OF FORCE 17-06, Sec. IV.C.2.b. (effective 1/10/2017).

[3] The Eastern District of Missouri has found scarring resulting from the defendant scratching plaintiff to be a sufficient injury for an Eighth Amendment claim when the defendant acted maliciously and sadistically for the purpose of causing pain and suffering. *Edwards v. Dwyer*, No. 1:06-CV-1, 2008 WL 4643946, at *3 (E.D. Mo. Oct. 20, 2008).

### b.      Head-ramming

At some point, correctional authorities decided to put Plaintiff in behavior control and isolation because of his actions towards the wardens. (Defs' Stmt. Fact, ECF No. 39 at 2). After he was handcuffed by Reed, Plaintiff was picked up and carried belly down (with his face facing the floor) to the infirmary for a pre-lockup procedure check. (ECF No. 48-1 at 15–16). Plaintiff claims that upon arrival at the entrance to the infirmary, the officers carrying him ran his head into the door like a battering ram "leaving him with a knot, bruising and a head and neck ache." Plaintiff overheard one of them make a comment along the lines of, "I guess we should open the door first." (*Id.* at 17). In the Amended Complaint, Plaintiff alleges that Larry Reed and Doe Defendants 1-4 and "probably" Defendant Pritchard ran his head into "a closed and locked door with the intent [and] purpose to case me harm." (ECF No. 5 at 5-6.) In his deposition, Plaintiff admitted that he did not know the identities of the individuals that ran his head into the door. (ECF No. 48-1 at 17.) In his Affidavit, Plaintiff only identifies these individuals as "guards." (*Id.* at 56.)

Defendants contend that Plaintiff cannot state a claim of excessive force for the head-ramming incident. Defendant Reed avers that his only involvement with Plaintiff on October 19, 2017, consisted of placing the handcuff restraints on him; that he did not escort Plaintiff to the infirmary; and that he did not have any further contact with Plaintiff that day. (Reed Aff., ECF No. 39-2 at ¶¶14-17.) According to Defendant Pritchard, when he arrived on the scene, Plaintiff was already in handcuff restraints and yelling and refusing to walk voluntarily. Defendant Pritchard confirms that he was one of the officers carrying Plaintiff to the infirmary, he had ahold of Plaintiff's legs and feet, and denies that he attempted to thrust Plaintiff's head into any door.

(ECF No. 37-4 at 2.)  Pritchard maintains that once they arrived outside of the infirmary, all the officers stopped and waited for access inside the infirmary.  *Id.*

Because *respondeat superior* or vicarious liability is inapplicable to § 1983 suits, Plaintiff must plead that each defendant, through his own individual actions, has violated the Constitution. *See Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).  A supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993).  "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ripson v. Alles,* 21 F.3d 805, 809 (8th Cir.1994) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988)); *see also Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003).  There is no evidence that any Defendant intentionally caused Plaintiff's head to be rammed into the door.

Plaintiff argues that Pritchard was there and should be held liable even if he was not the one to ram his head, because Pritchard failed to act failed to protect, and merely watched as Plaintiff's head was rammed into the door.  ECF No. 48 at 3.  Assuming it is not too late for Plaintiff to add a failure to protect claim against Pritchard, the claim would fail.  A prison official may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm to an inmate.  *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997) (citing *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994); *Buckner v. Hollins*, 983 F.2d 119, 122 (8th Cir. 1993)).  There is no evidence from which to infer

that Pritchard was aware of a substantial risk of ramming Plaintiff's head into the door or that he was deliberately indifferent to such a risk.

Plaintiff has offered no evidence beyond mere speculation that Reed, Pritchard, or any other defendant violated the Constitution through his own individual actions with intent to cause harm while carrying Plaintiff to the infirmary.  Additionally, if one of the unknown officers initiated running Plaintiff's head into the door on his own accord, as a single act it was not a "preventable harm" that any other Defendant could have realistically protected against.  Plaintiff has failed to allege any Defendant was deliberately indifferent to a substantial risk of harm.  As there is no issue of material fact, summary judgment should be granted on the 8th Amendment Excessive Force claims for head-ramming, and this claim should be dismissed against all Defendants.

### c.  Inside the Infirmary

Plaintiff alleges that once inside the infirmary, he sat on a chair while his hands were still handcuffed behind his back.  (ECF No. 48-1 at 18).  As he was talking to the nurse in a casual conversation, Defendant Pritchard came along behind him and, completely unprovoked "with evil intent" to cause harm, grabbed Plaintiff with two hands by the neck, lifted him up out of the chair and into the air, and then slammed him onto the concrete ground, crushing his elbow and breaking two of his ribs.  (*Id.* at 19, 20, 50, 56; ECF No. 5 at 5.)  Once on the ground, Plaintiff alleges "Pritchard and several John Does (1-4) jumped on me putting knees on my ribs kidneys and neck, they also used joint manipulations and pressure points to cause me pain without leaving bruises." ECF No. 5 at 5.  Before being forcefully taken out of the chair and to the ground, Plaintiff had not said anything to the guards or tried to bite or spit on anyone.  (*Id.*)  Following the incident, the guards and the nurse refused to take any pictures.  (*Id.* at 26).  The nurse did not examine him for

10

any injuries before the guards carried him to isolation. (*Id*. at 26–27). Plaintiff filed a grievance, and as a result, he had X-rays taken approximately a week later. According to Plaintiff, a doctor told him he had broken ribs. (*Id*. at 21, 29.) He was given ibuprofen and lay-ins. (*Id*. at 28.) Plaintiff's Grievance No. OR-17-01853 was filed on October 27, 2017. (Id. at 67.)

In support of their motion for summary judgment, Defendants have come forward with evidence showing the force used inside the infirmary was justified because Plaintiff attempted to bite and spit on people, including the nurse.

Nurse Gonzales' pre-lockup examination notes of the incident appear to have been prepared November 29, 2017 and explain, "when officer told him to look other direction inmate made a bitting [sic] motions towards the officers hand." The nurse was unable to obtain vital signs "due to inmate becoming uncooperative with officer. Inmate was placed on the ground and secured by three officers. No injuries noted at this time." (ECF No. 37-5.)

Grievance investigation worksheets were completed by two officers who assisted Pritchard in subduing Plaintiff inside the infirmary. According to the worksheet completed by Officer Corey Hunter on November 29, 2017, "Plaintiff was taken to the floor with the least amount of force to gain control of him after attempting to spit on staff." (ECF No. 48-1 at 64.) The worksheet completed by Officer Larodrick Duncan, also on November 29, 2017, provides no additional detail about what happened inside the infirmary, stating simply, "Once in the infirmary [Plaintiff] was taken down and a spit mask was applied." (ECF No. 48-1 at 62.)

The warden's response to Plaintiff's Grievance No. OR-17-01853, dated December 5, 2017, found that "[m]edical personnel reported that once in the infirmary you became uncooperative. First you attempted to bite officers then you attempted to spit on them so you were taken to the floor and a spit mask was placed on you." (ECF No. 48-1 at 67.)

The ADC Internal Affairs Division received the grievance case for a "Use of Force" review.  According to the Investigator's report, "Once in the infirmary staff reports that [Plaintiff] became uncooperative, refused staff orders, tried to bite and spit on security staff.  At this point [Plaintiff] was forced to the floor and staff placed a spit mask on him."  (IAD Report, Jan. 22, 2018, ECF No. 48-1 at 65.)  This report states that an "X-ray was taken on October 24, 2017 and the results are noted (attached)."  The Court notes that while Plaintiff's X-ray is mentioned, it is not attached to the report.  *Id.*

Plaintiff's grievance appeal was denied by the ADC Director on February 20, 2018 after finding Plaintiff had to be subdued because of his actions and that staff acted within policy.  *Id.*

In preparation for filing this motion for summary judgment, Defendant Pritchard signed an affidavit swearing that, while inside the infirmary, Plaintiff bit Pritchard's left hand "at the base of [Pritchard's] palm near [his] pinky finger."  (Pritchard Aff., Nov. 4, 2019, ECF No. 37-4 at ¶21.)  According to Pritchard, it was in response to being bit that he used both hands to lift Plaintiff "up by his shoulders and/or upper body and then put [Plaintiff] on the floor."  *Id.* at ¶ 22.  Once Plaintiff was on the ground, Pritchard attempted to pin him down "so that other ADC officials could place restraints on [Plaintiff] and attempt to gain control of him."  *Id.* at ¶ 23.  Once Plaintiff was under control, "a spit mask was placed around his face to prevent [Plaintiff] from biting and/or spitting on anyone else in the room."  *Id.* at ¶ 28.

The Court finds there is a dispute of material fact around whether Pritchard used force in good faith to maintain or restore discipline or maliciously or sadistically to cause harm.  Plaintiff claims he did not bite or attempt to bite or spit on anyone, and he was slammed to the floor without provocation.  While all ADC witness accounts uniformly agree that Plaintiff caused a disturbance inside the infirmary, not one ADC witness reported that Plaintiff bit Pritchard on the hand.  The

nurse said Plaintiff made a biting motion, and Officer Hunter reported Plaintiff attempted to bite staff.  It is Defendant Pritchard who, two years later, recalls for the first time sustaining a human bite on his hand during the encounter inside the infirmary.  A human bite can cause serious injury. According to Defendants, "bodily fluids, including saliva and blood, are a primary way to spread communicable diseases.  The danger is so significant that in Arkansas a person commits a Class D felony for expelling or in any other way transferring saliva and blood on a correctional officer. Ark. Code Ann. § 5-13-2011."  (ECF No. 54 at 5-6.)  Accepting Plaintiff's allegations as true and drawing all justifiable inferences in his favor, a jury could find that Pritchard did not sustain a human bite during the encounter on October 19, 2017, for if he had, he would have spoken up immediately, and the other ADC witnesses would have noticed; the bite would have been mentioned in the reports created at or near the time of the incident; and the Nurse would have mentioned the bite injury in her notes.  Finally, it would be reasonable to infer that Plaintiff would have been charged with a second Major Disciplinary that day for attempting something so serious as biting or spitting.  Yet, the only Major Disciplinary charge Plaintiff received October 19, 2017, was for creating noise and being insolent in the hallway outside the cafeteria.  If the force used inside the infirmary was unprovoked, it violated Plaintiff's clearly established 8th Amendment right to be free from cruel and unusual punishment.  *Wilkins v. Gaddy*, 449 U.S. 34, 130 S.Ct. 1175, 175 L.Ed. 995 (2010); *Munz v. Michael*, 28 F.3d 795 (8th Cir. 1994).  Accordingly, summary judgment on the issue of qualified immunity for Pritchard regarding use of force inside the infirmary should be denied.  However, as Plaintiff has offered no evidence beyond mere speculation that any other defendant(s) violated the Constitution inside the infirmary, Plaintiff's claims of excessive force against the individual Doe Defendants should be dismissed.

### d.     Post-Infirmary Beating

Plaintiff alleges that while he was still in handcuff restraints, several John Doe officers carried him from the infirmary to isolation.  Along the way he was choked into unconsciousness. Once in isolation, his clothes were ripped off, and he was thrown into a corner, sexually assaulted, and beaten.  Plaintiff has not identified any of the Doe Defendants and the time to do so has long passed.   As Plaintiff has offered no evidence beyond mere speculation that any specific defendant(s) violated the Constitution, he cannot state a claim regarding the post-infirmary use of force, and the excessive force claims against all Doe Defendants should be dismissed.

### 2.     Due Process Violations

Plaintiff asserts a Due Process claim against Defendant Reed alleging that Behavior Control violates Due Process and he believes that Reed assigned him to Behavior Control.  In Behavior Control, Plaintiff was stripped naked and not allowed a bed, bedding, hygiene products, a toothbrush, personal property, his glasses, legal supplies, or religious materials without a hearing. ECF No. 5 at 7-8.  Behavior Control is supposed to last seventy-two hours and Plaintiff was held there for eleven days.  Plaintiff asserts his Due Process rights were violated because he did not receive a hearing before or after being placed in Behavior Control nor did he receive a hearing regarding the additional time he was kept there while deprived of hygiene products and his property. *Id.*

In the motion for summary judgment, Reed argues that he had no role in Plaintiff's conditions of confinement.  (ECF No. 38 at 5).  In his Affidavit, Reed provides that he did not make the decision to place Plaintiff in behavior control and that he does not have the authority to place inmates in behavior control.  (ECF No 37-2 at 2).  The ADC's Administrative Directive on Behavior Control indicates that behavior control must be recommended by the shift supervisor to

the Duty Warden, which implies that the Duty Warden makes the decision of whether to place an inmate on behavior control. (ECF No. 37-7 at 2). Reed argues that Plaintiff can only offer speculation, that Plaintiff has not presented any admissible evidence to the contrary, and that as a result, Reed cannot be liable as to this claim. (ECF No. 38 at 5).

In response, Plaintiff admitted that he did not know if Reed was the one who placed him on behavior control, but that he draws this conclusion because Reed wrote the disciplinary regarding the incident where Plaintiff cursed at the wardens and ¶ 12 of Defendants' Statement of Undisputed Material Facts states that Plaintiff was placed on behavior control "as a result of Plaintiff's actions towards Warden Faust and Deputy Warden Jackson." (ECF No. 48 at 2; ECF No. 39 at 2).

There is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blakenship*, 100 F.3d 640 641, 643 (8th Cir. 1996) (holding inmate does not have a protected liberty interest in having prison official follow prison's administrative regulations)). Any liberty interest must be an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the state believes it can best determine how [the inmate] should be confined. *Phillips*, 320 F.3d at 847 (citing *Kennedy*, 100 F.3d at 643). An inmate charged with a disciplinary violation, placed on disciplinary court review status, and transferred to isolation without a hearing did not assert a liberty interest based on his assertion that he was denied of a hearing, as the procedures used to confine an inmate in segregation are not to be considered when determining whether an inmate possesses a liberty interest. *Id.* at 846–47.

In order to determine whether an inmate possesses a liberty interest, the Court is to compare the conditions to which the inmate was exposed in segregation with those he could expect to

15

experience as an ordinary incident of prison life. *Phillips,* 320 F.3d at 847 (citing *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997)). An inmate who makes a due process challenge to his segregated confinement must make a threshold showing that the deprivation of which he complains imposed an atypical and significant hardship. *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002). In *Phillips*, the Court stated, "[w]e have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. *Phillips*, *id.*; *see also Kennedy*, 100 F.3d at 642 (inmate's demotion from administrative segregation to punitive isolation for 30 days held to not be the sort of deprivation qualifying as "atypical and significant").

Finally, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (inmate failed to allege sufficient personal involvement by any of the defendants to support a claim that defendants deprived him of property without due process of law); *Jones v. Roy*, 449 Fed.Appx 526, 526–27 (8th Cir. 2011) (unpublished) (inmate failed to state a due process claim against defendants in their individual capacities because he did not plead facts suggesting that they were personally involved in the confiscation and deprivation of his property). Here, Plaintiff has failed to plead that Defendant Reed or any Defendant personally took action that violated his due process rights. *Reynolds*, 636 F.3d at 979. Accordingly, Plaintiff's Due Process claim(s) against all Defendants, including Reed the Doe Defendants, should be dismissed.

### 3.     1st Amendment Retaliation

Plaintiff's claim for First Amendment Retaliation against John Doe Defendants 5 through 7 is subject to dismissal for failure to state a claim. Plaintiff has not identified any of the Doe

16

Defendants and the time to do so has long passed.  As Plaintiff has offered no evidence beyond mere speculation that any specific defendant(s) retaliated against him in violation of the Constitution, he cannot state a claim, and the retaliation claims against all Doe Defendants should be dismissed.

## V.      ORDER

Wherefore, the Court makes its Order granting in part and denying in part Defendants' Motion for Summary Judgment (ECF No. 37):

1.  Summary Judgment is GRANTED on Plaintiff's claims against all Defendants in their Official Capacities and these claims are DISMISSED WITH PREJUDICE;

2.  Summary Judgment is GRANTED on the claims against all John Doe Defendants; and these Defendants are DISMISSED WITHOUT PREJUDICE;

5.  Summary Judgment is DENIED with respect to Plaintiff's Individual Capacity claim against Defendant Reed for Eighth Amendment Excessive Force in applying handcuffs, and this claim shall remain before the Court;

6.  Summary Judgment is DENIED  with respect to Plaintiff's Individual Capacity claim against Defendant Pritchard for Eighth Amendment Excessive Force inside the infirmary, and this claim shall remain before the Court.

7.  Summary Judgment is GRANTED to the extent that Plaintiff makes any claim to invalidate his conviction or reduce his sentence.

SO ORDERED this 2nd day of December 2020.


/s/*Robert T. Dawson*
ROBERT T. DAWSON
SENIOR U.S. DISTRICT JUDGE